**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**
Case No.: 9:18-cv-81251-REINHART

WYNDHAM VACATION OWNERSHIP, INC. a Delaware corporation; WYNDHAM VACATION RESORTS, INC., a Delaware corporation; WYNDHAM RESORT DEVELOPMENT CORPORATION, an Oregon Corporation; and SHELL VACATIONS, LLC, an Arizona limited liability company,

    Plaintiffs,

v.

US CONSUMER ATTORNEYS, P.A., a Florida professional corporation; HENRY PORTNER, ESQ. an individual; ROBERT SUSSMAN, an individual; PLUTO MARKETING INC., a Nevada corporation; and 1PLANETMEDIA INC, a Nevada corporation; JOHN DOES #1-50; NEWTON GROUP TRANSFERS, LLC, a Michigan limited liability company; THE NEWTON GROUP, ESA LLC, a Michigan limited liability company; INTERVAL BROKER DIRECT, LLC, a Michigan limited liability company; NEWTON GROUP EXIT, LLC, a Florida limited liability company; and DC CAPITAL LAW FIRM, LLP, a Washington D.C. limited liability partnership,

    Defendants.

**AMENDED JOINT SCHEDULING AND CONFERENCE REPORT**

**AMENDED JOINT SCHEDULING AND CONFERENCE REPORT**

The Parties submit this Amended Joint Scheduling and Conference Report in response to this Court's instructions at the Status Conference dated May 22, 2019 [DE 102; DE 110] after conducting telephonic meetings of the parties regarding same on June 5th and 7th, 2019, and pursuant to S.D. Fla. L.R. 16.1 and 26.1, the parties state:

1. **Estimated Valuation of the Case from the Perspective of Plaintiffs and Defendants**:

   a.   **Plaintiffs' Statement**

   Plaintiffs are seeking to recover Defendants' profits, any damages sustained by the Plaintiffs, and the costs of the action, including, without limitation, exemplary (treble) damages and corrective advertising. *See generally* 15 U.S.C. § 1117(a). Plaintiffs cannot make a precise calculation at this juncture as Defendants have not yet identified their Wyndham Owner (as that term is used in the Complaint) clients, and, in order to make such calculations, Plaintiffs will need discovery from the Defendants including, among other things, all monies charged and paid to Defendants by Wyndham Owners for their purported services (for purposes of assessing Lanham Act disgorgement damages), as well as the identify of all of Defendants' customers that were also Wyndham consumers (for purposes of assessing damages for claims sounding in tort), amongst other things; while Wyndham is able to identify some of the Defendants' Wyndham Owner Clients (and provided a list of same to the Defendants on June 7th, 2019, after Defendants initially disputed that Wyndham was required to disclose the entire list of names during the June 5th, 2019 initial telephone conference), Wyndham's knowledge is limited solely to those Wyndham Owners on who's behalf Defendants have sent letters. Wyndham is unable to identify Wyndham Owners that have retained Defendants, but for whom no letter has been sent by Defendants "claiming" that Wyndham Owner without discovery. Wyndham is further unable to

determine from whence such referrals were made – e.g. whether the USCA clients were referred by one of the Newton Defendants, 1 Planet, or a non-party. As an initial matter, based upon delinquent accounts, Wyndham anticipates that its monetary damages related to the breach of contracts alone will be in excess of $1,000,000.

    **b.**    **Newton Defendants' Statement**

The Newton Defendants value Plaintiffs' case at $0.00.

    **c.**    **USCA Defendants' Statement**

Defendants USCA, Portner, Sussman, 1Planet Media, and Pluto Marketing ("USCA Defendants") value Plaintiffs' case at $0.00. The USCA Defendants have previously filed an Answer and Affirmative Defenses to the Amended Complaint. The USCA Defendants contend in their affirmative defenses, *inter alia*, that the Plaintiffs will be unable to identify any individual "victims" of the USCA Defendants' purported conduct, or that the USCA Defendants' advertisements by themselves harmed the Plaintiffs in any way. The USCA Defendants contend that their affirmative defenses are well pled and will result in no liability for the USCA Defendants.

    **d.**    **Defendant, DC Law's, Statement**

DC Capital Law Firm, LLP ("DC Law") value Plaintiffs' case at $0.00.

2. **Supplemental Disclosures pursuant to Fed. R. Civ. P. 26(a)(1)**:

Initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) have already occurred. The parties may supplement as necessary and reasonable in accordance with the Federal Rules of Civil Procedure.

**3. Subjects on which Discovery may be Needed**:

    **A.** **Plaintiffs**

The Plaintiffs plan to seek discovery, including, without limitation, document and ESI discovery, concerning the facts and legal conclusions in its Complaint, and to rebut the facts and legal conclusions in the Defendants' forthcoming Answer and Affirmative Defenses. Such issues are expected to include, without limitation, the Defendants' alleged violation of the Lanham Act, 15 U.S.C. § 1125(a)(1), the Defendants' alleged tortious interference of Plaintiffs' contractual relations with their customers, Defendants' alleged violations of the Florida Deceptive and Unfair Trade Practices Act, alleged civil conspiracy on the part of all of the Defendants, Defendants' alleged violation of the Florida Vacation Plan and Timesharing Act, Defendants' alleged tortious interference with Plaintiffs' current and prospective business relationships, claimed damages, and right to injunctive relief. Relevant documents are expected to include Defendants' financial documents, Defendants' advertising and marketing, Defendants' financial transactions and bank records, Defendants' contracts (with each other, Wyndham Owners, or with other timeshare exit companies), Defendants' marketing agreements, Defendants' communications with Wyndham Owners, Defendants' internal communications, Defendants' communications amongst each other and with other companies related to timeshare "exit" or cancellation, and other presently unknown Defendants' communications.

    **B.** **Newton Defendants**

The subjects on which Discovery will be needed includes those listed below as well as those that may arise during the discovery phase of this action.

- Plaintiffs' contention that approximately three thousand timeshare contracts between Plaintiffs and Wyndham timeshare owners were tortiously interfered with;

- each of the 3,000 contracts Wyndham alleges has been breached and tortiously interfered with;

- the legitimacy, duration, origination, scope, terms, conditions and policies and procedures of Wyndhams' alleged Ovation Program;

- Plaintiffs' policies and procedures regarding their timeshare sales, loan originations, maintenance fees, hardship program, any other program Plaintiff has that permits timeshare owners to relinquish timeshares; defaulting timeshare owners for nonpayment, foreclosures, reporting defaults to credit agencies, reselling timeshares that Plaintiffs' take back from timeshares owners who have allegedly breach timeshare contracts, supervision of sales representatives, and compensation incentives to sales representatives; points-based timeshares and deeded timeshares;

- Plaintiffs sales revenue and profits from reselling timeshares that Plaintiffs have taken back from timeshare owners who have allegedly breached timeshare contracts;

- Plaintiffs communications with timeshare owners who have allegedly breached timeshare contracts;

- Each timeshare owner's position on whether he/she was defrauded by the Newton Defendants;

- Each timeshare owner's position on whether he/she used the Newton Defendants as their agent;

- Whether Plaintiffs' entire sales practices are oppressive and fraudulent, as suggested by the Missouri Better Business Bureau in its July 2018 study of timeshare resort sales practices;

- Plaintiffs' employees and former employees who have blown the whistle on Plaintiffs' fraudulent sales practices;
- Complaints of any nature made by timeshare owners to Plaintiffs regarding the timeshares owners who have allegedly breached their timeshare contracts;
- Complaints of any nature made by employees in relation to Plaintiffs' practice of damaging timeshare owners credit;
- The agreements between Plaintiffs and any defendant in this action;
- The transactions between Plaintiffs and any defendant in this action;
- The transactions between Plaintiffs and any timeshare owner who has hired any defendant in this action to act as their agent to relinquish their timeshare ownership;
- The applicable statute of limitations for each cause of action as it relates to Plaintiffs' alleged damages, etc.;
- Plaintiffs' promotion and notification of its alleged Ovation program, as well any other program that Plaintiffs have created that could enable a timeshare owner to relinquish a timeshare contract including without limitation a hardship program;
- Plaintiffs' records regarding the statistics it maintains in relation to a timeshare owners age, income, timeshare use, defaults, maintenance fees, foreclosures, among other things;
- Plaintiffs' policies stating the bases upon which they decide whether to permit a timeshare owner to relinquish a timeshare contract;
- Documents establishing that Plaintiffs have done business over the years with various timeshare exit companies including the Newton Defendants;

- Plaintiffs' financial statements to ascertain the extent of their allegations of lost revenue and good will;

- All allegations in Plaintiffs' amended complaint, all affirmative defenses relating thereto, as well as allegations and defenses relating to prospective counterclaims and cross-claims that may be filed.

### C. USCA Defendants

The Defendants plan to seek discovery, including document discovery, concerning the facts and legal conclusions in its Answer and Affirmative Defenses (as amended), and regarding the facts and legal conclusion in the Plaintiffs' Complaint (as amended). Such issues are expected to include, without limitation, the factual basis for Plaintiffs' claims, the Plaintiffs' unscrupulous, high pressure sales tactics; acts of third parties affecting liability and damages; identity and number of contracts allegedly subject to interference, the amount of damages claimed, and failure to mitigate any damages.

### D. Defendant, DC Law

DC Law intends to seek discovery by means of document requests, party and nonparty dispositions, subpoenas for documents and depositions, interrogatories, and requests for admissions, in each case concerning the claims and defenses involving DC Law, including but not limited to Plaintiffs' allegation that approximately 365 of contracts that were tortiously interfered with by DC Law; deposition of sales agents who sold Wyndham timeshare owners who were clients of DC law, including but not limited to policies and practices of Wyndham in the sale of timeshares, and bonus structure for sales, upgrades, and/or financing; depositions of Wyndham timeshare owners to demonstrate that Plaintiffs' claims lack merit because (among other things) these consumers were neither misled by DC Law advertising nor harmed by DC

Law's legal services, but to the contrary these consumers willingly and lawfully engaged DC Law as their agent in an effort to exit ownership of Wyndham timeshare; Plaintiffs' advertising and sales practices; Plaintiffs' Ovation program, including but not limited to the Wyndham's timeshare owners knowledge, promotion, and fees charges to participate; Plaintiffs' financial statements to ascertain the extent of their allegations of lost revenue and good will; discovery of subjects in the First Amended Complaint concerning other Defendants relevant to the DC Law's claims and defenses.

4. **<u>Limiting Discovery on Particular Issues through Stipulation</u>**:

The parties do not agree to limit discovery, by stipulation or otherwise, at this time.

5. **<u>Document Discovery Needed</u>**:

<u>Requests for Production or Inspection</u>:

Plaintiffs and Defendants have served and will serve requests for production and inspection and third-party document subpoenas accordingly, as per the Local Rules and the Federal Rules of Civil Procedure.

<u>Written Interrogatories</u>:

Plaintiffs and Defendants have served and will serve written interrogatories in accordance with the Federal Rules of Civil Procedure.

<u>Requests for Admission</u>:

Plaintiffs and Defendants will serve requests for admission per the Federal Rules of Civil Procedure.

**6. Phased Discovery**:

The Newton Defendants suggested and would prefer that discovery be managed, first, in regards to the issues of liability and, second, to damages. Plaintiffs would not agree to phased discovery at this time.

The parties acknowledge that (1) the Court intends to issue a discovery management order and (2) the previous stipulation and order staying the proceedings was not lifted until late May 2019, and that certain discovery served by the parties prior to the stipulation and order to stay was not responded to. The parties agree that the discovery requests that were served prior to entering the stay will be responded to by July 25, 2019.

Further, Wyndham emailed two lists containing a total of 3,000 names to Defendants on June 7, 2019. Wyndham's lists are earmarked as containing the names of Wyndham timeshare owners for which Wyndham received letters from USCA or DC Capital. Wyndham has not produced a list or any names earmarked as containing names of timeshare owners who have engaged a Newton Defendant because, according to Wyndham, it only has knowledge of those Defendants which sent letters to Wyndham indicating that particular Defendant has been retained by an individual Wyndham Owner. Wyndham has requested that all Defendants review the 3,000 names listed to determine how many were customers of each Defendant, which Wyndham believes was the instruction of the Court at the May 22, 2019 status conference.

The Parties agree that Defendants will use best efforts to process the lists as soon as possible for the purpose of identifying the names and determining whether they were in fact customers of a Defendant. Defendants have agreed that they will endeavor to do so by July 8, 2019, or as soon thereafter as they may reasonably process all 3,000 names. To the extent possible, the Newton Defendants will roll out names as it is able to do so.

7. **<u>Disclosure, Discovery, or Preservation of Electronically Stored Information</u>**:

The parties agree that the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Florida will apply in regard to the disclosure, discovery, and preservation of electronically stored information. Further information regarding electronically stored information, as it pertains to this case, is delineated as follows:

(a) The main documents and information sought will relate to (but not be limited to) the discovery subjects outlined in Paragraph 3 of this Report;

(b) The Newton Defendants estimate that the cost of electronically stored information will be substantial and could easily be millions of dollars in terms of accumulated time and third party vendors; however, the parties are unable at this time to specify the cost of electronically stored information; and

(c) The parties have agreed to the implementation of an ESI Protocol, which calls for the production of ESI in **native** form to the extent practicable. The parties acknowledge that this will require confidentiality designations and bates numbering to be included with the native files as a specific associated .dat or "load" file such that the platform utilized to review the ESI will be capable of denoting which files are designated confidential and what the bates numbers of those documents are. In other words, each native file will be accompanied by a .dat file designating the beginning and ending bates numbers of that native file, and the confidentiality designation of that native file (if any). To the extent special software is required to open certain file types (e.g. .dwg, .sql, etc.), the parties agree to either produce these files in a reviewable format such as .TIFF or .pdf (image) and .dat (or "load file") in accordance with the below, or to produce

viewing software by which to access such file types. This agreement does not include documents which require redaction, which, by their nature, must be produced in a .TIFF and .dat format. The "metadata" or embedded document information which shall be included in any such .dat fields (other than those accompanying native files) are as follows:

a. Email From

b. Email To

c. Email CC

d. Email BCC

e. Email Subject

f. Attachments

g. Beginning Bates Number

h. End Bates Number

i. Date & Time Sent

j. Date & Time Received

k. Date & Time Last Modified

l. Date & Time Created

m. Date & Time Last Printed

n. File Name

o. "File Path" or similar metadata otherwise indicating the full file string name (e.g. C:\Users\Public\FileName.ext)

p. Custodian

q. DeDuped Custodian

        r.      Author

        s.      Confidentiality Designation

        t.      Relational Data – e.g. "Group Identifier," "Parent IDs/AttachIDs," or other similar metadata which denotes the family members of an individual document (i.e. the associated attachments or "children" to an email; or the associated email or "parent" to attachments).

(d)    The parties have agreed that a clawback agreement be included within the Confidentiality Agreement, which the parties have submitted.

**8. Depositions**:

The parties may depose relevant fact and expert witnesses, including (without limitation) corporate representatives, employees (present and former), and Wyndham timeshare owners. The parties reserve the right to name additional individuals to be deposed as they are revealed through discovery. At this time, the parties are unable to agree regarding the length of depositions.

**Plaintiffs:** Wyndham believes the total number of depositions should be limited to 25 depositions, not including Corporate Representatives and Expert Depositions.

**DC Law**: DC Law believes the total number of depositions could be over 50 depositions. Specifically, DC Law believes it is entitled to depose each timeshare owner whose contract Plaintiffs allege DC Law tortiously interfered with as well as sales agents and/or sales managers who sold those timeshare owners a timeshare and other depositions, which may be necessary as revealed through discovery.

**Newton Defendants**: The Newton Defendants believe a limit of 25 depositions would impede due process because Plaintiffs are contending that several thousand timeshare owners

have been defrauded, and in relation thereto it appears that the Court may require the selection of 40 timeshare owners to be used as a sample in relation to establishing liability. As such, each of the 40 timeshare owners, and perhaps many more, may need to be deposed by the Parties to determine whether any of these alleged timeshare owners were defrauded or not. It is, therefore, not possible for the Newton Defendants to identify a number of depositions that may be required in this action other than to say it will likely require at least 40 depositions of timeshare owners in addition to each of the 11 Defendants' Corporate Representatives and expert witnesses.

The Newton Defendants specifically object to Plaintiffs' attempt to limit depositions of timeshare owners to 25 at this time for the reasons stated above.

**USCA Defendants**: The USCA Defendants believes the total number of depositions should be limited to 50 depositions, not including Corporate Representatives and Expert Depositions. This number includes purported identified clients from the client list (of nearly 3,000 people) identified by Wyndham.

9. **Issues about Claims of Privilege or of Protection as Trial-Preparation Materials**:

The parties have agreed to the entry of a Protective Order regarding designation of documents as confidential and attorneys' eyes only which has been submitted to the Court for approval.

10. **Changes in the Limitations on Discovery Imposed by the Federal Rules of Civil Procedure and the Local Rules**:

At this stage, there are no proposed changes in the limitations on discovery imposed by the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Florida other than the number and length of depositions addressed *supra*.

11. **<u>Mediation or a Settlement Conference with a Magistrate Judge prior to the Close of Discovery</u>**:

Settlement is unlikely in this case at this juncture, therefore the parties do not think a mediation or settlement conference with a Magistrate Judge prior to the close of discovery would be helpful.

12. **<u>Proposed Deadlines & Scheduling Order</u>**:

The parties are unable to agree on a trial date or scheduling. Their respective positions are set forth below:

**<u>Plaintiffs</u>**: Wyndham believes that a trial date in May of 2020 is appropriate. Wyndham request that the following timeframes are appropriate for deadlines and a scheduling order; however, the parties are unable to agree upon a trial date.

Answers and Affirmative Defenses: June 21, 2019.

Joinder of Additional Parties and Amend Pleadings: July 21, 2019.

Plaintiffs' Expert Disclosure: 220 days prior to trial

Defendants' Expert Disclosure: 190 days prior to trial

Rebuttal Expert Disclosure: 175 days prior to trial

Witness Lists: 160 days prior to trial

Discovery Cut-Off: 120 days prior to trial

Pretrial Motions (*Daubert*, Motions *In Limine*, Summary Judgment): 90 days prior to trial

Mediation: 75 days prior to trial

Joint Pretrial Stipulation & Deposition Designations: 60 days prior to trial

Objections to Deposition Designations & Counter Designations: 30 days prior to trial

Jury Instructions & Proposed Findings of Fact: 14 days prior to trial

**DC Law**: DC Law believes that a trial date in July of 2020 is appropriate.

**Newton Defendants**: As this Court is aware, this case is related to the case known as Diamond Resorts International, Inc. et. al. v. U.S. Consumer Attorneys, P.A., et. al., Case No. Case No. 9:18-cv-80311-ROSENBERG/REINHART (the "Diamond Action"). The Diamond Action was set for trial in March 2020. Until on or about June 6, 2019, Plaintiffs in this case were represented by the same attorneys of record. Now that the Plaintiffs in this case and the plaintiffs in the Diamond Action are not represented by the same counsel, there is a serious concern that the two actions, brought by plaintiffs with billions of dollars in revenues, will attempt to use the two actions as a means of inflicting enormous costs upon Defendants. The Newton Defendants therefore request that this action not run side by side with the Diamond Action. The Newton Defendants request that dates not be set at this time, but rather that the Court permit the parties to engage in discovery, and to file a joint status report in 90 days at which time the parties would be in a better position to set timeframes and deadlines. In any event, trial in this case should not be set until November 2020 at the earliest.

**USCA Defendants**: The USCA Defendants believe that an October 2020 trial date is appropriate.

Dated: June 11, 2019.

*/s/ Alfred J. Bennington, Jr.*
Alfred J. Bennington, Jr., Esq.
Florida Bar No. 0404985
Email: bbennington@shutts.com
Glennys Ortega Rubin, Esq.
Florida Bar No. 556361
Email: grubin@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile:  (407) 849-7255

and

Daniel J. Barsky, Esq**.**
Florida Bar No. 25713
Email: dbarsky@shutts.com
**SHUTTS & BOWEN LLP**
200 South Biscayne Boulevard, Suite 4100
Miami, Florida 33131
Telephone: (561) 650-8518
Facsimile:  (561) 822-5527


*/s/ Matthew Fornaro, Esq.*
Matthew Fornaro, Esq.
Email: mfornaro@fornarolegal.com
Matthew Fornaro, P.A.
11555 Heron Bay Boulevard
Suite 200
Coral Springs, Florida 33076

*Counsel for Defendants, US Consumer Attorneys, P.A., Henry Portner, Esq. and Robert A. Sussman, Pluto Marketing Inc., and 1Planetmedia Inc.*

*/s/ Sheena D. Smith*
Sheena D. Smith, Esq.
Email: Sheena.Smith@csklegal.com
Jonathan Vine, Esq.
Email: jonathan.vine@csklegal.com
**COLE, SCOTT & KISSANE, P.A.**
Esperante Building
222 Lakeview Ave., Ste. 222
W. Palm Beach, FL 33401
Telephone: 561-383-9203
Facsimile:  561-683-8977

*Attorney for Defendants, DC Capital Law Firm, LLP*

*/s/ Jeffrey Wittenberg*
Dwayne A. Robinson, Esq.
Email: drobinson@kttlaw.com
Javier A. Lopez, Esq.
Email:  jal@kttlaw.com
KOZYAK TROPIN & THROCKMORTON LLP
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL  33134
Telephone: 305-372-1800

And

Jeffrey Wittenberg, Esq. *(Pro Hac Vice pending)*
Email:  jeffrey@wittenberglawyers.com
WITTENBERG LAW APC
401 Wilshire Blvd., Floor 12
Santa Monica, CA 90401
Telephone:  310-295-2010

Ryan J. Clarkson, Esq. *(Pro Hac Vice pending)*
Email:  rclarkson@clarksonlawfirm.com
CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069
Telephone:  213-788-4050
Facsimile:   213-788-4070
*Attorneys for Defendants, Newton Group Transfers, LLC and The Newton Group, ESA LLC*